UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KIM F.,

                        Plaintiff,

v.                                                               8:18-CV-0588
                                                                 (TWD)
COMM'R OF SOC. SEC.,

                        Defendant.
_____

APPEARANCES:                                       OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON        STEVEN R. DOLSON, ESQ.
 Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.               JOHANNY SANTANA, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

# DECISION AND ORDER

      Currently before the Court, in this Social Security action filed by Kim F. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 9 and 16.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's complaint is dismissed.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1965, making her 50 years old at the amended alleged onset date and 51 years old at the date of the ALJ's decision. Plaintiff reported completing the ninth grade and previously working as a short order cook, kitchen helper, farm worker, and small parts assembler, as identified by the vocational expert at the administrative hearing. Plaintiff initially alleged disability due to arthritis as well as back and hip problems.

### B. Procedural History

Plaintiff applied for Supplemental Security Income on March 4, 2015, and for a period of disability and disability insurance benefits on March 17, 2015, alleging disability beginning September 1, 2014. Plaintiff subsequently amended her alleged onset date to her fiftieth birthday in 2015. (T. 36-37, 72, 81.[1]) Plaintiff's applications were initially denied on June 3, 2015, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at an administrative hearing before ALJ Shawn Bozarth on March 9, 2017. (T. 33-69.) On April 27, 2017, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 14-29.) On April 18, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-6.)

### C. The ALJ's Decision

The ALJ found Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2016, and has not engaged in substantial gainful activity since the amended

---

[1] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system. All other page references identified by docket number are to the page numbers assigned by the Court's CM/ECF electronic filing system.

alleged onset date in 2015. (T. 19.) Her degenerative disc disease of the lumbar spine, peripheral artery disease, bilateral carotid stenosis, and obesity were found to be severe impairments. (*Id*.) However, she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "listings"). (T. 20.) The ALJ found Plaintiff has the residual functional capacity ("RFC") to perform light work except "she can only occasionally balance, crouch, crawl, stoop, bend, kneel, and climb stairs. She should not climb ladders, ropes, or scaffolds. She should not be exposed to unprotected heights or moving machinery." (*Id*.) The ALJ found Plaintiff is unable to perform any past relevant work; however she can perform other jobs existing in significant numbers in the national economy. (T. 23-24.) The ALJ therefore concluded Plaintiff is not disabled. (T. 24.)

### D. The Parties' Briefings on Their Cross-Motions

Plaintiff argues the Commissioner's decision is not supported by substantial evidence and should be reversed and remanded for payment of benefits or further proceedings. (Dkt. No. 9 at 4-11.) She contends the ALJ committed reversible error by (1) failing to make an adequate evaluation of her alleged symptoms and (2) failing to adequately consider the opinion from her treating physician assistant, David Adams, PA-C ("PA Adams"). (*Id*. at 7-8.) Defendant argues Plaintiff has failed to show the Commissioner's decision was not supported by substantial evidence or had legal error and, therefore, the Commissioner's decision should be affirmed.

## II.  RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d

856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

Acting pursuant to its statutory rulemaking authority, 42 U.S.C. § 405(a), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Substantial Evidence Supports the ALJ's Analysis of the Opinion Evidence and Plaintiff's RFC

RFC is defined as "what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (internal citations omitted). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Id.* (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

The Second Circuit has long recognized the "treating physician rule" set out in 20 C.F.R. §§ 404.1527(c), 416.927(c). "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of

6

treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

### i. *The ALJ's Analysis of the Opinion Evidence*

In May 2015, Plaintiff underwent a consultative examination conducted by Elke Lorensen, M.D., who observed Plaintiff to have a limited range of motion in the lumbar spine and a reduced squat and that Plaintiff claimed decreased sensation to light touch in the lower extremities. (T. 347-48.) Dr. Lorensen noted a right hip scan showed mild superior joint space narrowing and diagnosed back pain. (T. 348-49.) She opined Plaintiff had moderate restrictions to bending, lifting and reaching. (T. 348.) The ALJ afforded this opinion great weight, "as it was rendered after a thorough examination of [Plaintiff] by a physician with extensive program professional expertise. It is also generally consistent with the objective evidence of record." (T. 22.)

In March 2017, PA Adams submitted a medical source statement indicating he had been treating Plaintiff for six to eight months and noted diagnoses including chronic hip and back pain and peripheral artery disease with a guarded prognosis. (T. 580.) He opined Plaintiff could tolerate moderate stress, walk one city block without rest or severe pain, sit for 30 minutes at a time for a total of about four hours in an eight hour workday, and stand for 30 minutes at a time for a total of about four hours. (*Id*.) She would need to take unscheduled breaks once or twice

7

for five minutes. (T. 581.) She could occasionally lift less than 10 pounds, never lift over 10 pounds, frequently look down, turn her head right or left, look up and hold her head in a static position, occasionally twist, stoop and climb stairs, rarely crouch/squat, never climb ladders, frequently use her hands for grasping, turning and twisting objects, frequently use her fingers for fine manipulations, and frequently use her arms for reaching. (T. 581-82.) She was likely to have good and bad days and her pain or other symptoms were occasionally severe enough to interfere with attention and concentration needed to perform even simple work tasks. (T. 582.)

The ALJ indicated this opinion had been considered and given some weight based on the length and nature of treatment

> in accordance with Social Security Ruling 03-06p,[2] which provides that information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment and how it affects the individual's ability to function. While the report of a health care provider who is not an acceptable source must be considered in accordance with this Ruling, that opinion cannot be granted controlling weight in the same manner as an opinion from an acceptable source as defined in 20 CFR 404.1502 and 416.902 could be.

(T. 22.)

        *ii.*      *The Court's Analysis*

Plaintiff argues the ALJ erred by failing to adequately consider opinion evidence from PA Adams pursuant to 20 C.F.R. §§ 404.1527 and 416.927 rather than SSR 06-03p. (Dkt. No. 9 at 9-11.) Plaintiff also notes the opinion from PA Adams provides the only medical opinion

---

[2]    It is presumed the ALJ was actually referring to SSR 06-03p, which Plaintiff argues was rescinded prior to the issuance of the ALJ's unfavorable decision. (T. 22; Dkt. No. 9 at 9.)

following Plaintiff's amended alleged onset date in 2015, and is the only medical opinion following development of heart problems in 2015. (*Id*. at 10.) The Court disagrees for the following reasons.

First, as Defendant points out, SSR 06-03p explained how the Social Security Administration considered opinions and other evidence from sources who were not acceptable medical sources and it was rescinded on March 27, 2017, with the rescission effective for claims filed on or after March 27, 2017. (Dkt. No. 16 at 5; *see also* 2006 WL 2329939; Fed. Register Notice Vol. 82, No. 57, p. 15263.) The ALJ therefore correctly relied upon SSR 06-03p in considering PA Adams' opinion as Plaintiff's applications were filed in prior to March 27, 2017, in March 2015. (T. 70-71, 203-15.)

Second, the ALJ's consideration of the opinions from Dr. Lorensen and PA Adams indicates an implicit consideration of the regulatory factors to which Plaintiff cites. (T. 22.) For example, the ALJ indicated he gave great weight to Dr. Lorensen's opinion because it was rendered after a thorough examination by a physician with extensive program and professional expertise. (T. 22.) The ALJ also indicated PA Adams' opinion had been considered and afforded some weight based on the length and nature of treatment. (*Id*.) Further, although the ALJ appeared to identify PA Adams as an "other source" whose opinion was not entitled to controlling weight, the ALJ still afforded some weight to this opinion. (*Id*.)

Third, although PA Adams' opinion considers Plaintiff's peripheral artery disease and post-dates Plaintiff's amended alleged onset date, it is clear to the Court that the ALJ properly considered the longitudinal evidence of record documenting Plaintiff's various conditions. (T. 20-22.) As indicated above, Plaintiff's peripheral artery disease and bilateral carotid stenosis were found to be severe impairment at step two. (T. 19.) The ALJ summarized all of the

treatment notes relating to this condition, along with objective medical testing such as CT scans and Doppler exams, which showed plaque build-up and obstruction of arteries leading to a carotid endarterectomy. (T. 21, 384, 393, 402, 416, 469-70.) The ALJ also noted that despite objective testing, Plaintiff was asymptomatic and objective medical testing after the surgery only showed mild plaque formation and normal findings. (T. 21, 402, 406, 469-70.) *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir.1983) (the Commissioner may rely not only on what the record says, but also on what the record does not say). The ALJ indicated he considered Plaintiff's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929. (T. 20.) The ALJ also noted he considered the opinion evidence in accordance with 20 C.F.R. §§ 404.1527 and 416.927. (*Id*.) The Court's review indicates the ALJ's overall decision represents an adequate consideration of the opinions of record and the medical evidence as well as Plaintiff's alleged impairments, testimony, and activities of daily living.

Finally, the Court notes the ALJ was tasked with reviewing all the evidence which was before him, resolving any inconsistencies therein, and making a determination consistent with the evidence as a whole. *See Bliss v. Colvin*, No. 13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *Petell v. Comm'r of Soc. Sec.*, No. 12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."). The Court's review of the ALJ's decision

indicates he properly reviewed the opinion and other evidence of record in determining Plaintiff's RFC.

For the reasons outlined above, the ALJ's analysis of the medical opinions and Plaintiff's RFC is supported by substantial evidence. Remand is therefore not required on these bases.

### B. Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). "The ALJ must 'carefully consider' all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (alternation in original) (quoting 20 C.F.R. § 404.1529(c)(3); SSR 16-3p)). SSR 16-3p, applicable on March 28, 2016, indicates the evaluation of symptoms involves a two-step process.[3] 2017 WL 5180304, at *2.

The Social Security Administration ("SSA") "will first consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." *Id.* at *3. "[O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the SSA will then] evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related

---

[3] The Court notes the standard for evaluating subjective symptoms has not changed in the regulations. Rather, use of the term "credibility" has been eliminated and SSR 16-3p makes clear the subjective symptom evaluation is not an evaluation of the claimant's character. *See* 2017 WL 5180304.

activities . . . ." *Id.* If the SSA cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, it will "carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms." *Id*. at *6.

In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, factors to be considered include: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p, 2017 WL 5180304, at *7-8.

Here, Plaintiff argues the ALJ erred in evaluating her alleged symptoms by failing to detail any of the regulatory factors or provide meaningful explanation as to why her allegations of symptoms were not given greater consideration in formulating the RFC. (Dkt. No. 9 at 4-9.) Plaintiff also contends her daily activities and failure to stop smoking are not good reasons for discounting her allegations. (*Id*. at 8.) The Court does not find these arguments persuasive for the following reasons.

First, the Court's review of the ALJ's evaluation of Plaintiff's symptoms indicates a thorough consideration of Plaintiff's subjective complaints, her reports of functioning, and the medical evidence. (T. 20-22.) For example, within his RFC analysis, the ALJ summarized Plaintiff's complaints of back and hip pain with alleged limitations in standing, walking, and lifting. (T. 21, 345-49.) The ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical

12

evidence and other evidence of record. (T. 21.) He explained her statements had been found to affect her ability to work only to the extent they could reasonably be accepted as consistent with the objective medical and other evidence. (*Id.*)

Second, the ALJ also explained the objective evidence of record failed to support the level of severity alleged by Plaintiff, citing to lumbar scans showing moderate degenerative changes and osteopenia as well as a right hip x-ray showing only mild superior joint space narrowing with no fracture and dislocation. (T. 21, 349, 352, 355.) The ALJ further explained that, although Plaintiff "has received treatment for the allegedly disabling impairment(s), that treatment has been essentially routine and/or conservative in nature in the form of physical therapy and medication management" without any consultation regarding surgical intervention. (T. 21, 350-463.) The ALJ noted Plaintiff's diagnosis of peripheral artery disease and bilateral carotid stenosis with testing showing only mild plaque formation bilaterally in August 2016 and no evidence of significant reversible ischemia and normal left ventricular ejection fraction in February 2016. (T. 21, 384, 393, 402, 416, 469-70.)

Third, the ALJ further indicated Plaintiff "described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (T. 22.) Specifically, the ALJ cited to Plaintiff's reports that she cooks two-to-three times per week, cleans daily, does laundry once per week, shops every two months, showers and dresses daily, and goes out occasionally. (T. 22, 346.) Although Plaintiff argues otherwise, the ALJ properly considered Plaintiff's activities as one of several regulatory factors in evaluating her symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p, 2017 WL 5180304, at *7-8.

Finally, the Court finds the ALJ provided good reasons for not fully crediting Plaintiff's allegations, despite her arguments to the contrary. (Dkt. No. 9 at 8.) The ALJ cited to Plaintiff's

13

daily activities and indicated it was noteworthy that Plaintiff continued "to smoke cigarettes despite repeated recommendations for cessation." (T. 22, 576.) However, these were not the only reasons the ALJ listed in his evaluation of Plaintiff's symptoms. Even if these were not good reasons, which the Court does not conclude, the ALJ also cited to various treatment notes and testing while indicating the objective evidence of record failed to support the level of severity alleged by Plaintiff. (T. 21, 349, 352, 355.)

Therefore, the Court finds substantial evidence supports the ALJ's evaluation of Plaintiff's symptoms and thus remand is not required on this basis.

## IV. CONCLUSION

In light of the foregoing, the Court finds the ALJ's decision was based upon correct legal standards and substantial evidence supports his determination that Plaintiff was not under a disability within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520 (g), 416.920(g).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED** that Plaintiff's complaint is **DISMISSED**.

Dated: September 10, 2019
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge